UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN PRYN, on behalf of THERESA
PRYN,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

19-CV-62
DECISION & ORDER

---

On January 11, 2019, the plaintiff, Theresa Pryn,[1] brought this action under the Social Security Act. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On October 18, 2019, Pryn moved for judgment on the pleadings, Docket Item 12; on January 15, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 17; and on February 5, 2020, Pryn replied, Docket Item 19.

For the reasons stated below, this Court grants Pryn's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] On October 18, 2019, Pryn's counsel notified the Court that Pryn had died during the pendency of this action. Docket Item 11. On December 20, 2019, Pryn's counsel moved to substitute Pryn's husband, John Pryn, to proceed on her behalf. Docket Item 16. This Court's use of "Pryn" throughout this decision and order refers to Theresa Pryn.

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Pryn argues that the ALJ erred in three ways.  Docket Item 12-1 at 1.  She first argues that the ALJ improperly "cherry picked" the testimony of medical expert Michael Buckwalter, M.D.  *See id.* at 10-14.  She then argues that the ALJ failed to properly evaluate the opinion of Craig MacLean, D.O., her treating physician.  *See id.* at 14-18.

2

She finally argues that the ALJ's mental Residual Functional Capacity ("RFC") determination was unsupported because the ALJ relied solely on her own lay opinion. *Id.* at 19-22. This Court agrees that the ALJ erred and, because that error was to Pryn's prejudice, remands the matter to the Commissioner for proper consideration of the opinions of Drs. McLean and Buckwalter.

**I.     TREATING PHYSICIAN RULE**

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments." *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015)

3

(quotations and alterations omitted).  These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error."  *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

Here, Dr. MacLean—Pryn's treating physician—opined that Pryn's "pain and symptoms would frequently to constantly interfere with her attention and concentration for simple work tasks."  Docket Item 7-2 at 20.  He further opined that Pryn "was incapable of low-stress jobs, and that [she] could only sit, stand, and/or walk for less than two hours in an eight-hour workday."  *Id.*  He added that she "was unable to stoop, crouch, or climb ladders, and that [she] was expected to be absent from work more than four days per month."  *Id.*

The ALJ gave Dr. MacLean's "opinions little weight . . . because they are not consistent with the evidence from [the period of disability], including his own treatment notes and the well-supported opinions of medical expert Dr. Buckwalter."  *Id.*  More specifically, the ALJ explained that "[o]n the same day that [Dr. MacLean] completed the medical source statement, he noted in a treatment note that [Pryn] had requested that he complete this report with the dates of 2000 through 2005 in mind, while indicating that her work-related limitations during this time period were primarily attributable to the death of her young son."  *Id.* (citing Docket Item 7-2 at 5).

The ALJ failed to "explicitly" consider several of the *Burgess* factors before assigning "little weight" to Dr. MacLean's opinion.  For example, the ALJ never even acknowledged that Pryn "ha[d] been [Dr. MacLean's] patient for more than 10 years."

4

*See* Docket Item 7-2 at 5.  The ALJ thus failed to "explicitly" consider "the frequency, length, nature, and extent of [Dr. MacLean's] treatment."  *See Greek*, 802 F.3d at 375.  Nor did the ALJ explain why he credited the opinion of Dr. Buckwalter—who only reviewed Pryn's medical records and never once examined her—over that of her longtime treating physician.

Moreover, while the ALJ rejected some of Dr. MacLean's opinions as "not consistent with the evidence from [the period of disability], including his own treatment notes," Docket Item 7-2 at 20, she never said what those opinions were, what that evidence was, or how they were inconsistent—except for one citation to a treatment note from 2013, which was after the period of disability.  What is more, the ALJ misstated the substance of that treatment note:  the ALJ read the note as "indicating that [Pryn's] work-related limitations during this time period were *primarily attributable to* the death of her young son," *id.* (emphasis added), but the note actually states that Pryn "indicate[d] that most of her physical and mental ailments occurred *following* the death of her son," *id.* at 5 (emphasis added).  The fact that Pryn's ailments occurred following the death of her son does not mean they were *primarily attributable* to that event.

Finally, although the ALJ noted in passing that "the record shows that [Pryn's] overall condition steadily deteriorated as time passed after the date last insured," *id.* at

5

20, she made no attempt to analyze "the amount of medical evidence supporting [Dr. MacLean's] opinion."  *Greek*, 802 F.3d at 375.[3]

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [this Court] that the substance of the [treating-physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for assigning 'little weight'" to Dr. MacLean's opinion.  *See Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran*, 362 F.3d at 32); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion").  The Court finds no such assurance here.

In particular, the ALJ appears to have used Dr. Buckwalter's review of the records as a primary reason for rejecting Dr. MacLean's opinion.  But as explained above, Dr. Buckwalter never even laid eyes on Pryn, and the ALJ failed to give any good reasons why she credited his testimony over a doctor who had seen Pryn for a decade.  *See Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987) ("A corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis.").

For all those reasons, this Court finds that the ALJ erred in her evaluation of Dr. MacLean's opinion.

---

[3]  It is not clear from the record "whether [Dr. MacLean] is a specialist."  *See Greek*, 802 F.3d at 375.  The ALJ did note that Dr. MacLean "is not identified in the record as a mental health specialist," Docket Item 7-2 at 20, but made no such finding with respect to Pryn's physical impairments.

6

## II.   DR. BUCKWALTER'S OPINION

Based on a review of Pryn's medical records, Dr. Buckwalter testified, among other things, that he "believe[d] it [was] possible [Pryn] may miss a day, a few half days of work a month."  Docket Item 7-2 at 48.  The ALJ stated that she did not include such absences in her RFC determination "because the speculative opinions are not specific functions and are unsupported by the medical evidence during the relevant period." *Id.* at 20.  "Even so, [the ALJ] note[d] that the [VE] testified at the hearing that the jobs would still be available even with 10% time off-task or one day off per month."  *Id.*

Pryn claims that the ALJ's rejection of this portion of Dr. Buckwalter's testimony while giving "significant weight" the remainder of the opinion constitutes improper cherry-picking.  See Docket Item 12-1 at 11-12.  This Court agrees.  *See Strange v. Comm'r of Soc. Sec.*, No. 6:13-CV-527 GLS/ESH, 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 16, 2014 ("A classic case of cherry-picking evidence occurs when administrative law judges credit information consistent with their findings while ignoring or discrediting inconsistent information *from the same sources* without providing plausible reasons." (emphasis in original)).

Here, the ALJ rejected Dr. Buckwalter's opinion regarding Pryn's attendance while crediting the remainder of Dr. Buckwalter's opinion without giving a reasoned explanation for the rejection.  First, the ALJ's claim that Dr. Buckwalter's opinion on Pryn's absences was "unsupported by the medical evidence during the relevant period" is simply not true:  On the contrary, Dr. MacLean opined that Pryn would miss up to four days per month.  See Docket Item 7-2 at 20.  And although the ALJ discredited Dr. MacLean's opinion, she did so in part based on Dr. Buckwalter's opinion.

Second, although it is true that Dr. Buckwalter used language that was somewhat speculative, stating that he "*believe[d] it [was] possible* [Pryn] may miss a day, a few half days of work a month," Docket Item 7-2 at 48 (emphasis added), that is not a reason to reject that testimony out of hand. If the ALJ needed further clarification on Dr. Buckwalter's level of certainty for that conclusion, she should have recontacted him. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (explaining that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996))).

So the ALJ had an opinion from a treating physician that Pryn would miss up to four work days a month. She had another opinion from a specialist who reviewed the medical records that Pryn might miss "a day, a few half days" of work a month. The ALJ chose to credit the opinion of the latter physician at the expense of the opinion of the treating physician. And she then rejected both physicians' opinions about missing work and substituted her own lay judgment in their place. That was error, pure and simple.

Thus, this Court finds that the ALJ erred in her evaluation not only of Dr. Buckwalter's opinion but of both opinions on Pryn's absences.

### III.    REMAND IS THE PROPER REMEDY

Pryn contends that "[t]he proper remedy here is remand for calculation of benefits because both opinions of record, including Dr. Buckwalter's opinion which was given significant weight and [the opinion of] Dr. MacLean, her treating physician, found Ms. Pryn would have absences at a rate which equate to a finding of disability." Docket Item 12-1. This Court disagrees.

8

As an initial matter, the ALJ is not obligated to credit either of those opinions; she must give an appropriate explanation for her rejection of them, however, which was her error here. What is more, Dr. Buckwalter's testimony did not definitively state that Pryn would miss more than one day per month—the threshold at which the VE said an individual would be unemployable. He stated that she might miss "a day, a few half days of work a month." Docket Item 7-2 at 48. It is not clear whether this meant a day *and* a few half days, a day *or* a few half days, or something else altogether. Moreover, as Pryn observes, "a few half days" might mean "more than one day." Docket Item 12-1 at 13. But "a few half days" also could mean approximately one day. So Dr. Buckwalter's opinion is not conclusive proof that Pryn would be unable to work in light of the VE's testimony.

Thus, Pryn has not met the standard for calculation of benefits, and this Court remands for further administrative proceedings consistent with this decision and order.

## **CONCLUSION**

For the reasons explained above, this Court remands this matter for reconsideration of Dr. MacLean's and Dr. Buckwalter's opinions.[4]

---

[4] The Court "will not reach the remaining issues raised by [Pryn] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

**ORDER**

The Commissioner's motion for judgment on the pleadings, Docket Item 17, is DENIED, and Pryn's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

    SO ORDERED.

Dated:    July 20, 2020
             Buffalo, New York

                              */s/ Lawrence J. Vilardo*
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE